J-S74010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CLEO JOSEPH RUFFIN, JR., | |
| Appellant | No. 2828 EDA 2013 |

Appeal from the Judgment of Sentence Entered September 13, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0003893-2012

BEFORE:  BENDER, P.J.E., DONOHUE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:　　　　　**FILED DECEMBER 23, 2014**

Appellant, Cleo Joseph Ruffin, Jr., appeals from the judgment of sentence of 60-120 months' incarceration, following his conviction for robbery, terroristic threats, and simple assault.  In this appeal, Appellant challenges the sufficiency of the evidence pertaining to his conviction for robbery.  He also contends that the trial court abused its discretion when it admitted a gun into evidence, admitted the testimony of a witness, and when it sentenced Appellant outside the sentencing guidelines to the statutory maximum penalty for his robbery conviction.  Appellant also complains that the trial court erred by revoking bail prior to the conclusion of

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant's trial, and when it denied him bail pending the instant appeal. After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

On January 10, 2012 at approximately 11:05 a.m. the Darby Borough Police were dispatched to 223 Main Street for an assault in progress. While responding to this call the Police received another dispatch directing them to 117 Main Street for another assault with a firearm in progress. Upon arrival, Officer Jeffrey Bevenour of the Darby Borough Police Department found both victims, Douglas Arnodo and Joseph Pfaff out front of 121 Main Street.

Pfaff advised that he had been assaulted and that he had seen the actor display a firearm in his waistband. Arnodo advised that the same actor who had assaulted Pfaff attempted to rob him several minutes later. They both described the assailant as a taller black male with a bushy beard. Arnodo advised that he was punched in the throat and the assailant threatened that he was going to go get his gun from inside an apartment. The assailant then ran inside of 121 Main Street and went into the basement apartment shortly prior to the Police arrival.

The Police attempted for several minutes to make contact at the apartment the assailant was seen entering, however no one answered the door. Due to the nature of the call, the Police forced entry into the apartment. In the rear bedroom the Police found a black male with a bushy beard, who was identified to be [Appellant], Cleo Ruffin Jr. Also found in the residence was the tenant, Roshan Jones, Jone[s'] 14[-]year[-]old son, and her 4[-]year[-]old granddaughter.

Ruffin was brought out front where both Arnodo and Pfaff positively identified Ruffin as the actor who had assaulted them. Pfaff advised that he had been hired by the property manager of 117-123 Main Street to pick up trash on the property. While he was picking up trash out back he observed Ruffin sitting in a green Dodge Durango for approximately 10 minutes. Pfaff then sat down to smoke a cigarette which is when Ruffin exited the Durango and accosted him, accusing him of being a police officer. Ruffin then punched Pfaff in the face once with a closed

- 2 -

fist at which point Pfaff held up a long stick he had been using to pick up trash in self-defense. Ruffin then stated[,] "what are you gonna do with that?" and lifted up his shirt to display a black handgun which was tucked in his waistband. Pfaff then took off running towards 2nd Street and called 911, leaving behind a Wawa hoagie, a black jacket, and a box of trash bags. After Ruffin was taken into custody Pfaffs black jacket and the box of trash bags were found out front of 121 Main St. (the apartment which Ruffin had run into).

Officer Bevenour then spoke with Arnado who is a contractor hired by the building managers to work on the air conditioning systems. Arnodo stated that he observed what he believed to be an argument between Pfaff and Ruffin and avoided becoming involved. Several minutes later he returned to his work truck which had been parked in the common rear lot shared by the addresses of 117-123 Main Street. Upon returning to the truck he observed Ruffin inside the truck with a bottle of beer, riffling through its contents. Arnodo also observed two (2) 25 foot long rolls of 3/8" copper tubing, a Makita Hammer Drill (valued at $300), a copper tube bender (valued at $49.00), and a Milwaukee drill (valued at $250.00) on the ground to the rear of his truck. Arnodo advised Officer Bevenour that these items were not removed by himself or his crew. Arnodo confronted Ruffin about being in his truck and Ruffin responded by exiting the truck while yelling, and then punching Arnodo several times in the throat and about his upper body with closed fists. Arnodo fought back in self[-]defense. Ruffin then ran away and told Arnodo that he was "going to get his gun." Ruffin then ran into 121 Main Street. Arnodo then called 911. Arnodo advised Officer Bevenour that he had seen Ruffin inside of Apartment A while doing work in the past, which is why he believed Ruffin had gone in there.

Officer Bevenour then spoke with Roshan Jones. Jones stated that Ruffin had come into the apartment, got undressed, and laid down in bed. Jones then heard the loud and clear knocks and announcements from Police and stated that Ruffin told her not to answer the door. Jones stated that she did not believe any firearms were in the apartment and gave police written consent to search her residence. No firearm was recovered during a subsequent search. Ruffin gave police verbal consent to search his Durango. No firearm was found in the Durango.

Trial Court Opinion (TCO), 12/19/2013, at 1-3.

As noted above, Appellant was arrested on January 10, 2012. Regarding the incident with Arnodo, Appellant was charged with two counts of robbery, 18 Pa.C.S. § 3701(a)(1)(ii) ("threatens another with or intentionally puts him in fear of immediate serious bodily injury") and 18 Pa.C.S. § 3701(a)(1)(iv) ("inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury"); terroristic threats, 18 Pa.C.S. § 2706(a)(1); and simple assault, 18 Pa.C.S. § 2701(a)(1).[1]  Appellant was also charged with offenses related to the incident with Pfaff, however, those charges were dismissed after Pfaff failed to appear at Appellant's preliminary hearing.

Appellant's two-day jury trial began on June 25, 2013.  The jury found Appellant not guilty of the more serious robbery offense.[2]  The jury found Appellant guilty of the remaining count of robbery,[3] terroristic threats, and simple assault.  On September 13, 2013, the trial court sentenced Appellant to 60-120 months' incarceration for robbery.  The court did not sentence Appellant for terroristic threats or simple assault.

---

[1] There were numerous other charges, which are not relevant to the instant appeal, that were ultimately withdrawn prior to trial.

[2] Section 3701(a)(1)(ii), a first degree felony.

[3] Section 3701(a)(1)(iv), a second degree felony.

On September 25, 2013, Appellant filed a *pro se* post-sentence motion seeking reconsideration of his sentence. He then filed a counseled notice of appeal on October 10, 2013, and a Pa.R.A.P. 1925(b) statement on November 21, 2013. The trial court issued its Rule 1925(a) opinion on December 19, 2013.

Appellant now presents the following questions for our review:

(1) Does the evidence in this case support the jury's finding that [Appellant] was guilty of Robbery with infliction of bodily injury when there is no evidence presented that the victim suffered injuries and no evidence that the items were ever taken from the victim with force?

(2) Did the trial court err by allowing testimony about a gun that was never recovered and from which a previous gun charge[] was dismissed at the Preliminary Hearing?

(3) Did the trial court err by allowing testimony of an additional witness, Joseph Pfaff, under the Planning and Opportunity exception to Prior Bad Acts?

(4) Did the court err in denying [Appellant]'s motion *in limine* to exclude testimony of Joseph Pfaff when the original case against Joseph Pfaff was dismissed before the Magisterial District Justice?

(5) Did the trial court err by allowing jury instructions, over counsel's objections, as to flight and concealment as consciousness of guilt?

(6) Did the trial court err in denying the motion for directed verdict and motion to quash of the Robbery Charges when there was no evidence presented of any injury to the victim or removal of items from the victim?

(7) Did the trial court err in deviating the sentence of [Appellant] beyond the standard range and past the aggravated range and by sentencing [Appellant] to the statutory minimum of sixty months even though there were not aggravating factors associated with a Robbery Conviction?

(8) Did the [t]rial court err in using the [Appellant]'s prior record as an aggravating factor in sentencing [Appellant], since it was originally contemplated into his Prior Record Score?

(9) Did the [t]rial [c]ourt err in using [Appellant]'s erroneous Pre-Sentence Investigation as an aggravating factor in the sentencing of [Appellant]?

(10) Did the [t]rial [c]ourt err in withdrawing and revoking bail prior to the conclusion of the trial?

(11) Does prison overcrowding and [Appellant]'s likelihood of prevailing on appeal — given the facts of this case are even more compelling for a "not guilty" — favor suspending the sentence and granting bail pending the appeal?

(12) Was the evidence presented sufficient to establish a conviction for Robbery when no evidence was presented that the victim was injured or that the items were stolen, and no[] threats were made and when the evidence did not prove beyond a reasonable doubt a conviction of Robbery and/or Simple Assault and Terroristic Threats[?]

Appellant's Brief at 9-10.

Appellant does not subdivide the argument section of his brief in compliance with Pa.R.A.P. 2119(a), which dictates that "[t]he argument shall be divided into as many parts as there are questions to be argued[.]" Instead, he categorizes the questions presented for our review into four argument sections. We overlook this breach of the Rules of Appellate Procedure because it does not hinder our review of Appellant's claims, as several of the questions presented for our review overlap and/or involve interrelated claims. However, we reorganize Appellant's claims, in the same manner as he presents them in the argument section of his brief, for ease of disposition, as follows:

A. THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF ROBBERY AS SAID VERDICT LACKED SUFFICIENCY OF THE EVIDENCE[.]

B. THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF A GUN AND THE TESTIMONY OF JOSEPH PFAFF.

C. THE TRIAL COURT ERRED IN DEVIATING THE SENTENCE OF THE DEFENDANT BEYOND THE STANDARD RANGE AND PAST THE AGGRAVATED RANGE: WHEN THERE W[ERE] NO AGGRAVATING FACTORS; WHEN THE COURT USED THE DEFENDANT'S PRIOR RECORD AS AN AGGRAVATING FACTOR WHEN THE PRIOR RECORD IS ORIGINALLY CONTEMPLATED INTO ACCOUNT WITH THE PRIOR RECORD SCORE; AND WHEN THE COURT IMPROPERLY RELIED UPON OTHER FACTORS IN THE PRESENTENCE REPORT[.]

D. THE TRIAL COURT ERRED IN WITHDRAWING AND REVOKING BAIL PRIOR TO THE CONCLUSION OF TRIAL AND IN NOT GRANTING BAIL PENDING THE APPEAL[.]

Appellant's Brief, at i-ii (parenthetical notes omitted).

## **Sufficiency of the Evidence Claims**

Appellant presents challenges to the sufficiency of the evidence supporting his convictions for robbery, terroristic threats, and simple assault (questions 1, 6, and 12 above). Our standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

First, pertaining to his conviction for robbery, Appellant contends that the Commonwealth did not present sufficient evidence that the victim, Arnodo, suffered injuries. He also argues that there was no evidence that he stole items from Arnodo by force; indeed, he maintains that "[a]t no time did [Appellant] take any property from Mr. Arnodo's person." Appellant's Brief at 16.

Appellant was convicted of robbery pursuant to 18 Pa.C.S. § 3701(a)(1)(iv), which provides, in pertinent part, as follows:

**(a) Offense defined.--**

> (1) A person is guilty of robbery if, in the course of committing a theft, he:

> …

> > (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

18 Pa.C.S. § 3701(a)(1)(iv).

Appellant's claim that his robbery conviction is infirm because the victim, Arnodo, did not suffer any injuries, is without merit on its face. The express terms of Section 3701(a)(1)(iv) do not require the infliction of injury to sustain a conviction under that provision. It is enough that Appellant "threatens another with or intentionally puts him in fear of immediate bodily injury[.]" *Id.* Nevertheless, Appellant did inflict bodily injury upon the

victim. Appellant "punch[ed] [Arnodo] several times in the throat and about his upper body with closed fists." TCO, at 7. He also put the victim in fear of immediate bodily injury with these actions, as well as when he threatened to get his gun after Arnodo began defending himself. Thus, this claim is meritless.

Appellant also contends there was not sufficient evidence of a robbery because he was not acting "in the course of committing a theft" when the confrontation with Arnodo occurred. 18 Pa.C.S. § 3701(a)(1). He argues, "[a]t most this was an attempted theft that ended when [Appellant] was confronted by Mr. Arnodo." Appellant's Brief, at 19. However, the record belies this claim, and Appellant misconstrues the applicable law.

As a matter of law, the Commonwealth did not have to demonstrate that the predicate offense of theft was completed. The Commonwealth only needed to prove that a theft was in progress to secure a conviction for robbery. *See Commonwealth v. Robinson*, 936 A.2d 107, 110 (Pa. Super. 2007) (holding that a "conviction for robbery does not require proof of a completed theft"). Arnodo testified that when he approached his own vehicle, Appellant was rummaging through it and several items that had been in the vehicle were strewn about on the ground. The jury could have inferred from this evidence that Appellant was committing a theft when Arnodo confronted him. Accordingly, this claim is also without merit.

Appellant does not present any argument regarding his claims that there was insufficient evidence of simple assault and terroristic threats.

> "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." ***Estate of Haiko v. McGinley***, 799 A.2d 155, 161 (Pa. Super. 2002); Pa.R.A.P. 2119(b). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." ***Lackner v. Glosser***, 892 A.2d 21, 29–30 (Pa. Super. 2006) (citations omitted). This Court will not act as counsel and will not develop arguments on behalf of an appellant. ***Irwin Union National Bank and Trust Company v. Famous and Famous and ATL Ventures***, 4 A.3d 1099, 1103 (Pa. Super. 2010) (citing ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007)).

***Coulter v. Ramsden***, 94 A.3d 1080, 1088-89 (Pa. Super. 2014). Accordingly, these remaining sufficiency claims have been waived as they are inadequately developed.

## Admission of Pfaff's Testimony

Next, Appellant claims the trial court abused its discretion when it permitted Pfaff to testify. Appellant complains that Pfaff's testimony consisted almost entirely of references to prior bad acts, including testimony that Appellant showed Pfaff a firearm during the course of their interaction before the incident with Arnodo. Appellant raised this claim in a motion *in limine* filed prior to trial.[4]

---

[4] Although Appellant's April 10, 2013 motion *in limine* appears in the certified record, there is no transcript in the certified record of the hearing conducted on June 24, 2013, addressing that motion. Nevertheless, the record before us is sufficient to address this matter.

The admission of evidence is solely within the province of the trial court, and a decision thereto will not be disturbed absent a showing of an abuse of discretion. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will discretion ... is abused."

*Commonwealth v. Murray*, 83 A.3d 137, 155-56 (Pa. 2013) (internal citations omitted).

Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact. *Commonwealth v. Powell*, 598 Pa. 224, 956 A.2d 406, 419 (2008).

*Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009).

The trial court concluded that "the Pfaff assault was part of a sequence of events which formed the history of the case. Therefore, the evidence was properly admitted as it tended to prove [Appellant's] identity, the manner in which the crimes were committed, the weapon used or threatened, the motive, and the location." TCO, at 10-11. Nevertheless, Appellant contends that

the testimony of Mr. Pfaf[f] regarding the alleged assault and robbery and testimony [about] the gun should have been excluded due to the fact that it was offered under the guise that it is being offered to serve some purpose other than to demonstrate the defendant's propensity to commit the crime charged. Specifically, it was offered only for the propensity for

- 11 -

committing criminal acts or [Appellant's] bad character. Furthermore, the ruling to allow the admission of Mr. Pfaf[f]'s testimony reflects prejudice against [Appellant], especially in light of the fact that no gun was ever recovered, and that charges as to the gun, as well as [Appellant]'s charges of robbery as to Mr. Pfaf[f] were both dismissed at the preliminary hearing stage.

Appellant's Brief at 22-23 (internal citation omitted). Appellant also cites to *Commonwealth v. Spruill*, 391 A.2d 1048 (Pa. 1978), to support his claim.

Appellant's reliance on *Spruill* is inapposite. In that case, the appellant was on trial for murder. The prosecution called a witness who, when asked if he ever did anything for the appellant, stated, "Yes." *Spruill*, 391 A.2d at 1049. The prosecutor then asked, "For example what?"; to which the witness responded, "Buried a couple bodies for him." *Id.* The appellant objected and asked for a mistrial, which was denied by the trial court. On appeal, our Supreme Court reversed, holding that the witness's testimony constituted impermissible and highly prejudicial evidence of prior bad acts. *See id.* at 1049-50. The Commonwealth had argued that "the quoted testimony was merely a premature reference to the burial of the victim and as such did not constitute a reference to crimes other than the one for which appellant was then being tried." *Id.* at 1050. Our Supreme Court dismissed that argument:

This position would be well taken had the witness merely stated that he had buried [o]ne body, but the reference was to a "[c]ouple of bodies." It is difficult to conceive of the jury not treating this testimony as a reference to crimes other than the one for which appellant was being tried. Timely objection was

- 12 -

made by counsel for appellant. The misstatement, if that is what it was could have been corrected by an instruction by the court, or by additional questioning by the Commonwealth's attorney to establish that the witness had made a misstatement. No instruction was given by the court, no correction was attempted and the jury was permitted to consider evidence of possible murders other than the one for which appellant was being tried. We therefore cannot accept the trial court's view that the jury construed this statement as a premature reference to the burial of the body of the victim in this case.

[The Commonwealth] argues that there are exceptions to the rule that reference to prior criminal activity of the accused constitutes error. With this statement we, of course, agree. However, we cannot accept appellee's implied premise that the rule is so porous that it is virtually meaningless. The exceptions that have been recognized are instances where there is a legitimate basis for the introduction of the evidence other than a mere attempt to establish the accused's predisposition to commit the crime charged.

The Commonwealth argues that this evidence was admissible to establish the relationship between the witness and appellant. Assuming arguendo, that under some circumstances evidence of prior unrelated criminal activity may be permissible to show a relationship between the witness and the defendant, no such circumstances have been established in this record. The bald statement that the witness had buried "a couple of bodies" for the appellant without more, sheds little, if any, light upon the nature of the acquaintance that existed between the two.

Evidence of prior criminal activity (particularly of the type of conduct suggested by this statement) is probably only equalled by a confession in its prejudicial impact upon a jury. Thus, fairness dictates that courts should be ever vigilant to prevent the introduction of this type of evidence under the guise that it is being offered to serve some purpose other than to demonstrate the defendant's propensity to commit the charged crime.

*Id.* at 1050-51 (footnotes omitted).

Here, there is no dispute that Pfaff's testimony constituted evidence of

prior bad acts. However, unlike what occurred in ***Spruill***, the record in the

instant case adequately supports the exceptions invoked to permit the admission of that prior bad acts evidence. Indeed, the admission of Pfaff's testimony was justified under several exceptions. By placing Appellant at the scene of the crime, Pfaff's testimony helped to establish Appellant's identity and his opportunity to commit the crime against Arnodo. Pfaff's testimony also tended to discount the possibility of mistake or accident with regard to Appellant's intentions in Arnodo's vehicle. Additionally, Pfaff's testimony regarding Appellant's possession of a gun corroborated the threat issued to Arnodo. Unlike what had occurred in **Spruill**, the exceptions invoked to overcome the ban on prior bad acts evidence in this case were not illusory; they had a legitimate basis for which we can readily find support in the record. Thus, Appellant's claim that these exceptions were improperly invoked is meritless.

Alternatively, Appellant complains that even if the prior bad acts exceptions apply in this case, the prejudice that ensued outweighed the probative value of Pfaff's testimony. We disagree. The trial court issued the following instruction to the jury regarding Pfaff's testimony:

> You have heard evidence tending to prove that [Appellant] was guilty of improper conduct for which he is not on trial. I am speaking of the testimony and the statement of Joseph Pfaff. This evidence is before you for a limited purpose, that is, for the purpose of tending to show the identity, opportunity, absence of mistake, and intent of [Appellant] with respect to the crimes alleged to have been committed against Douglas Arnodo. This evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that [Appellant] is a person of bad character or

- 14 -

criminal tendencies from which you might be inclined to infer guilt.

N.T., 6/26/13, at 152.

There is nothing in the record indicating that Appellant objected to the above instruction, and Appellant does not discuss its impact on the prejudicial nature of Pfaff's testimony. We also note that Pfaff's testimony was highly probative of several important issues in this case, as Appellant's identity as the perpetrator was at issue. Given that the above instruction mitigated any resulting undue prejudice by directing the jury to only consider the prior bad acts evidence for the limited purposes for which it was offered, we conclude that the probative value of Pfaff's testimony was not outweighed by its prejudicial effect.

### **Discretionary Aspects of Sentencing**

Next, Appellant challenges the discretionary aspects of his sentence. He argues that in imposing an aggravated range sentence, the trial court failed to consider the impact of the crime on the victim and relied on impermissible factors contained in the pre-sentence report. Appellant also argues that consideration of his prior offenses was improper because those crimes were already accounted for in the calculation of Appellant's prior record score.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912-13.

As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id.*

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).

Appellant filed a timely notice of appeal, and preserved his discretionary aspects of sentencing claims by means of argument during his

- 16 -

sentencing hearing.[5]  However, Appellant's brief does not contain a Rule 2119(f) statement, nor does he offer any argument on the threshold question of whether his sentencing claims present a substantial question for our review.   However, the Commonwealth has not objected to these deficiencies in Appellant's brief, and Appellant's claims clearly present a substantial question for our review because they concern whether the trial court sentenced him inappropriately under the sentencing code.   *See* 42 Pa.C.S. § 9721(b) ("[T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to **the impact on the life of the victim** and on the community, and the rehabilitative needs of the defendant.") (emphasis added); *Commonwealth v. Archer*, 722 A.2d 203, 210 (Pa. Super. 1998) (*en banc*) ("[I]f a sentencing court considers improper factors in imposing sentence upon a defendant, the court thereby abuses its discretion[.]") (quoting *Commonwealth v. Krum*, 533 A.2d 134, 135 (Pa. Super. 1987) (*en banc*)); *Commonwealth v. Simpson*, 829 A.2d 334, 339 (Pa. Super. 2003) ("It is impermissible for a court to consider factors already included within

---

[5] Appellant's *pro se* post-sentence motion did not preserve these matters, because he was represented by counsel when he filed the motion, and he is not entitled to hybrid representation. ***See Commonwealth v. Padilla***, 80 A.3d 1238, 1259 (Pa. 2013) (holding that the "[a]ppellant had no right to hybrid representation and thus no right to demand that the trial court address his *pro se* motions on the merits").

the sentencing guidelines as the sole reason for increasing or decreasing a sentence to the aggravated or mitigated range."). Thus, we will address the merits of Appellant's discretionary aspects of sentencing claims.

First, Appellant complains that the trial court failed to consider the impact of the crime on the victim. However, the trial court specifically states that it "considered the impact to the victim" at sentencing. TCO, at 15. Appellant fails to explain, by reference to the record or otherwise, how the court's consideration of the impact on the victim was illusory or inadequate. Accordingly, this claim is without merit.

Second, Appellant claims the court improperly considered his assault of Pfaff, which occurred immediately before this crime. Appellant argues that because the charges related to Pfaff were dismissed, that incident should not have played a part in the trial court's consideration of his sentence. However, "[e]ven if a sentencing court relies on a factor that should have not been considered, there is no abuse of discretion when the sentencing court has significant other support for its departure from the sentencing guidelines." *Commonwealth v. Sheller*, 961 A.2d 187, 192 (Pa. Super. 2008). Here, Appellant concedes that in crafting his sentence, the trial court considered his criminal history, his lack of remorse and failure to take responsibility for his actions, the fact that he was arrested three times while he was released on bail in this case, and his rehabilitative needs. Appellant does not develop any argument regarding why these factors fail to constitute "significant other support" for the trial court's departure from the

guidelines in this case. *Id.* Accordingly, we conclude that this claim lacks merit.[6]

Third, Appellant argues that the trial court abused its discretion when it considered Appellant's prior record as an aggravating sentencing factor when that factor had already been used to calculate his prior record score. As we noted above, even if a court considers an improper factor, "there is no abuse of discretion when the sentencing court has significant other support for its departure from the sentencing guidelines." *Id.* Here, the trial court provided many reasons for departing from the guidelines while crafting Appellant's sentence and, again, Appellant fails to develop any argument regarding why these factors fail to constitute "significant other support" for the trial court's departure from the guidelines in this case, even if its consideration of his prior record was improper. *Id.* Nevertheless, Appellant also fails to explain how the trial court can accurately and adequately consider statutory factors such as the protection of the public and Appellant's rehabilitative needs without at least some consideration of his

---

[6] Nevertheless, Appellant has not cited any legal authority suggesting that it is impermissible for a sentencing court to consider, when crafting a sentence, conduct which provided the basis for charges that were ultimately dismissed. Significantly, Pfaff stated that he was afraid to testify at Appellant's preliminary hearing because a gun was involved in that assault. N.T., 6/26/13, at 59. Charges relating to the assault on Pfaff were dismissed due to Pfaff's failure to appear at Appellant's preliminary hearing. Thus, this is not a situation where the trial court considered alleged conduct for which Appellant was acquitted.

prior record. *See* 42 Pa.C.S. § 9721(b) ("[T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with **the protection of the public**, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and **the rehabilitative needs of the defendant**.") (emphasis added). Clearly, recidivist behavior reflects on both of these factors. Accordingly, we conclude that this claim lacks merit.

### Bail

Finally, Appellant contends that the trial court erred when it revoked his bail prior to the conclusion of his trial. He also complains that the trial court erred when it denied him bail pending resolution of the instant appeal. These claims, together, comprise only a single page of Appellant's brief. Appellant's Brief, at 27. Therein, Appellant does not discuss the reasons given by the trial court regarding its decisions to revoke bail before Appellant's trial and to deny bail pending appeal.[7] Furthermore, although he briefly references the applicable rules, Appellant does not cite any case law in support of his bald assertion that the trial court abused its discretion in

---

[7] The trial court indicates that it revoked Appellant's bail prior to trial, and denied him bail pending appeal, because he presented a threat to the community. TCO, at 19. As noted by the trial court when considering Appellant's sentence, Appellant was arrested three times while out on bail prior to his trial.

making these bail determinations. Accordingly, we conclude that Appellant has waived these claims. *See Coulter*, *supra*.

Judgment of sentence *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/23/2014